AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Western District of New York

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No. 18-mj-1076
130 N. 8th Street, New York, 14092; )
single family residence, beige in color with the numbers )
"130" affixed to the front corner of the residence )

**APPLICATION FOR A SEARCH WARRANT**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
SEE ATTACHMENT A, attached hereto and incorporated herein by reference.

located in the ___Western___ District of ___New York___, there is now concealed *(identify the person or describe the property to be seized)*:
SEE ATTACHMENT B, attached hereto and incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, Sections 371 & 922(a)(6) | Conspiracy to Commit an Offense & Making a False Statement During the Purchase of Firearms |

The application is based on these facts:
SEE ATTACHED AFFIDAVIT, attached hereto and incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: ____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Teresa Petit, Special Agent ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4/28/18

*Judge's signature*

City and state: Buffalo, NY

Jeremiah J. McCarthy, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR SEARCH AND SEIZURE WARRANTS | Case No. 18-mj-1076<br><br>**UNDER SEAL** |

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Teresa J. Petit, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), being duly sworn, depose and state as follows:

### INTRODUCTION

1. I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so since 2014, and I am currently assigned to the Columbus, Ohio, Field Office.

3. I have participated in numerous investigations focusing on firearms trafficking, gangs, and distribution of illegal narcotics. I have conducted covert surveillance of suspected traffickers, interviewed numerous individuals involved in gangs and illegal firearm and/or narcotic trafficking trade, been a member of surveillance teams, participated in the execution of numerous state and federal search and arrest warrants involving firearm and/or illegal narcotic traffickers and violent offenders, and participated in the seizure of numerous firearms and controlled dangerous substances. Through my training, education and experience, I have become familiar with the manner in which firearms intended for criminal use are transported, stored, and resold, similar to

the transportation, storage and distribution of illegal narcotics. I am also familiar with the methods of payment for such unlawful transfer of firearms and the distribution and the manner in which firearm and/or narcotic traffickers communicate with each other.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, police officers, witnesses, telephone records, and reports. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that Jeremy L. HEARN (hereinafter "HEARN"), Jerome I. WATKINS (hereinafter "WATKINS"), Marcedes L. GREEN (hereinafter "GREEN"), Kristina E. DELORENZO (hereinafter "DELORENZO"), and others have committed violations of Title 18, United States Code, Section 922(a)(6), that is, knowingly making any false or fictitious oral or written statement to a firearms dealer with respect to any fact material to the lawfulness of the acquisition or disposition of firearms and ammunition, as well as Title 18, United States Code, Section 371, that is two or more persons conspiring to commit any offense against the United States, and that execution of the search warrant will lead to evidence of these crimes.

6. I have not included all of the information relevant to the investigation in this affidavit, but I do not believe that I have omitted any information that would have a tendency to defeat a showing of probable cause. To the best of my knowledge and belief, all statements made in this affidavit are true and correct.

## PURPOSE OF THE AFFIDAVIT

7. I submit this affidavit in support of an application for a warrant to search at the residence of 130 N. 8th Street, Lewiston, New York 14092 and all out buildings located on the

same property (hereinafter "TARGET PREMISES"), as further described in Attachment A, and to seize the items described with particularity in Attachment B.

8.  I submit pursuant to the facts set forth in this affidavit, that there is probable cause to believe that HEARN, WATKINS, GREEN, DELORENZO, and others are engaged in firearm trafficking related offenses, including: knowingly making any false or fictitious oral or written statement to a firearms dealer with respect to any fact material to the lawfulness of the acquisition or disposition of firearms and ammunition, in violation of 18 U.S.C. § 922(a)(6); and two or more persons conspiring either to commit any offense against the United States, in violation of 18 U.S.C. § 371. I further submit pursuant to the facts set forth in this affidavit, that there is probable cause to believe that the lawful execution of the search warrant sought herein will lead to additional evidence that HEARN, WATKINS, GREEN, DELORENZO, and other individuals unknown are engaged in such crimes. The execution of a search warrant at the TARGET PREMISES will aid in developing further evidence of the conspirators' firearm trafficking activities, including further establishing a pattern of HEARN, WATKINS, GREEN, DELORENZO, and others unknown in their firearm trafficking activities, determining meeting locations, and identifying customers and other members of the firearm distribution conspiracy, including their residence(s) and/or stash-house(s).

## BASIS FOR FACTS CONTAINED IN THIS AFFIDAVIT

9.  Your affiant has participated in the investigation of the above- and below-described offenses. Based upon my personal participation in this investigation, as well as information obtained from other law enforcement officials, I am familiar with the facts and circumstances of this investigation. Your affiant makes this affidavit based, in part, on my personal knowledge and observations derived from my participation in this investigation and, in part, upon information

provided to me by other law enforcement officers.

10. Because this affidavit is being submitted for the limited purpose of seeking authorization to execute a search warrant on the TARGET PREMISES, I have not set forth each and every fact learned during the course of this investigation. I am not relying upon facts not set forth herein in reaching my conclusion that an Order should be issued. Nor do I request that this Court rely upon any facts not set forth herein in reviewing this affidavit in support of the application for a search warrant.

## FACTS ESTABLISHING PROBABLE CAUSE

11. In April of 2018, the ATF identified a firearm trace, T20180120410, with a documented 58-day time-to-crime, with a recovery location in Ottawa, Ontario, Canada. The phrase "time-to-crime" refers to the period between the last documented retail transaction and the date it is recovered by law enforcement. According to the firearm trace, Jeremy L. HEARN was listed as the original purchaser of the recovered firearm. HEARN purchased the firearm on or about February 1, 2018, from Cap City Outfitters LLC, a Federal Firearm Licensee (hereinafter "FFL") located at 4465 Cemetery Road, Hilliard, Ohio 43026. Your affiant knows from training and experience that a 58-day time-to-crime is a short amount of time and is an indicator of firearm trafficking. Most individuals who purchase firearms retain them for extended periods up to years in length. Therefore, whenever a firearm is recovered in a criminal offense shortly after it was purchased it is highly likely that the firearm was diverted to the criminal possession in some sort of firearm trafficking scheme. Your affiant also knows from training and experience that the shorter the time-to-crime for the firearm recovery the more likely it is that the original purchaser, in this case HEARN, has a more direct involvement in the firearm trafficking scheme.

12. Continuing in April of 2018, your affiant conducted multiple queries of an ATF

database and other resources available and identified that HEARN has purchased a minimum of thirty-eight (38) firearms between the dates of January 19, 2018, and April 26, 2018. HEARN has acquired the known firearms from various FFLs through multiple sale transactions occurring on various dates. A "multiple sale" transaction is defined as when an individual purchases two (2) or more handguns from the same FFL within a five (5) business day timeframe. The FFL is required to report the "multiple sale" to ATF. Specifically, HEARN purchased the known firearms in twelve (12) separate retail firearm transactions. HEARN has purchased multiple firearms of the same make, model, and caliber. Your affiant knows from training and experience that the rate at which HEARN has acquired the firearms and the repeated nature of the type of firearms acquired is indicative of an individual who is acquiring firearms for others for the purpose of resale and diversion into criminal possession.

13. On April 25, 2018, your affiant spoke with the co-owner/operator of a central Ohio FFL who stated that HEARN and another individual were in the retail store on April 22, 2018. ATF obtained video surveillance of HEARN with the unknown individual in the FFL on April 22, 2018. The unknown individual is suspected to be WATKINS based on comparison pictures between the video surveillance and photographs available via social media. Your affiant knows from training and experience that often individuals involved in firearm trafficking schemes will accompany the original purchaser of the firearms to the FFL to pick out the types of firearms to purchase. Moreover, HEARN and the unknown individual arrived together at the FFL location in a 2017 black Nissan Altima with Virginia license plate VEW4475. Based upon further investigation conducted by your affiant, this black Nissan Altima was discovered to belong to Hertz Rental Car and was rented by WATKINS. WATKINS rented the vehicle on or about April 21, 2018, in New York and was to return it on April 28, 2018, to a location identified at NIA, NY

(believed to represent Niagara Falls, NY). HEARN completed paperwork to purchase three (3) firearms; however, the co-owner/operator did not complete the transaction, informed HEARN that there was a delay, and told HEARN that he would follow up with HEARN to complete the purchase on a later date. HEARN provided that central Ohio FFL with the contact telephone number of (614) 632-2084. HEARN returned to the black Nissan Altima and left the area.

14. The co-owner/operator further stated that he recognized HEARN from an attempted purchase on March 3, 2018. On that date, HEARN was in the store with a female identified as GREEN. Both HEARN and GREEN completed paperwork to purchase firearms on March 3, 2018, however the co-owner/operator delayed their purchase. Your affiant identified that GREEN has purchased six (6) firearms in two separate multiple sale transactions. Both dates that GREEN purchased firearms, HEARN also had a multiple sale transactions on the same date at the same FFL. Through further investigation, your affiant learned that HEARN provided the money to GREEN to purchase the firearms.

15. GREEN was arrested on March 29, 2018, by the Ohio State Highway Patrol (OSP) and charged with multiple traffic violations. According to OSP, GREEN was operating a vehicle that has a current Ohio registration returning to HEARN. The vehicle registration displays a purchase date of March 16, 2018, and lists HEARN as the registered owner corresponding to an address your affiant, through the investigation, knows to be HEARN's. Additionally, GREEN was arrested and a bond was required for her release. According to records available from the Franklin County Municipal Court, HEARN posted the bond.

16. On April 26, 2018, your affiant was notified that two (2) additional firearms purchased by HEARN had been recovered. As to one, the ATF Trace information indicated that a firearm purchased by HEARN on January 22, 2018, at Build A Gun, an FFL located at 2700

Billingsley Road, Columbus, Ohio 43235, was recovered in Ottawa, Ontario, Canada on April 13, 2018. This firearm recovery calculated to an eighty-one (81) day time-to-crime. Similar to the explanation above from paragraph 11, your affiant knows from training and experience that an eighty-one day time-to-crime period is a short amount of time and is an indicator of firearm trafficking. Regarding the other firearm recovered in Ottawa, Ontario, Canada on April 13, 2018, HEARN purchased that firearm on March 4, 2018, from The Bullet Ranch LLC, an FFL located at 12425 Broad Street SW, Pataskala, Ohio 43062. The time-to-crime recovery was forty days. Again, your affiant knows from training and experience that a forty day time-to-crime period is a short amount of time and is an indicator of firearms trafficking. Also noteworthy, while these two firearms were both recovered on the same date in Ottawa, Ontario, Canada, the recovery locations and possessors were not the same, which your affiant knows from training and experience to be indicative of firearms trafficking. On March 4, 2018, when HEARN purchased the aforementioned firearms that have since been recovered in Ottawa, Ontario, Canada, GREEN also completed one of her two multiple sale transactions on the same date at the same FFL. On April 27, 2018, your affiant was notified that an additional firearm trace was completed for a firearm that HEARN purchased on February 5, 2018, calculating to a seventeen (17) day time-to-crime, which your affiant knows is also indicative of firearms trafficking.

17.     Pursuant to federal law and regulation, the FFL is required to obtain a completed ATF Form 4473 (the "Firearms Transaction Record") from the actual purchaser of a firearm before the FFL can transfer or sell a firearm to any unlicensed person. 18 U.S.C. § 923(g); 27 C.F.R. § 478.124. ATF Form 4473 gathers a host of information about the purchaser, including information to determine if the purchaser may lawfully possess a firearm. FFLs also may not transfer a firearm to an unlicensed person without first conducting a background check through

the National Instant Check System ("NICS"), and recording the information on the ATF Form 4473. 18 U.S.C. § 922(t); 27 C.F.R. § 478.102. The NICS process is run by the Federal Bureau of Investigation ("FBI") and provides the mechanism through which FFLs determine whether a particular purchaser is prohibited from possessing firearms. Providing false or misleading information to an FFL in connection with the acquisition of a firearm, e.g., lying on the ATF 4473, is a violation of federal law. 18 U.S.C. § 922(a)(6). HEARN indicated on the ATF 4473 forms that he was the "actual buyer" of the firearms in question when, in truth in fact, he was nothing more than a straw purchaser. More specifically, a "straw" purchase is described as the acquisition of a firearm(s) from a dealer by an individual (the "straw"), done for the purpose of concealing the identity of the true intended receiver of the firearm(s). Additional information required on the ATF 4473 requires the purchaser's state of residency and address. Between the dates of January 19, 2018, and April 26, 2018, HEARN provided on the ATF 4473 that his residence is located at 903 Carolyn Avenue, Columbus, Ohio 43224. HEARN used this same address on the ATF 4473 he submitted for every firearm transaction where he was the purchaser. On April 24, 2018, your affiant conducted surveillance at the residence at 903 Carolyn Avenue, Columbus, Ohio 43224, and observed a silver BMW registered to HEARN parked on the street in front of the location.

18. ATF obtained record that HEARN was documented by the U.S. Customs and Border Protection Agency returning via way of the "Rainbow Bridge" from Canada into Niagara Falls, New York, on November 26, 2017. During the vehicle encounter HEARN was operating his silver BMW and WATKINS was a passenger. WATKINS is a resident of Niagara Falls, New York. In addition, WATKINS has been documented returning to the United States via way of the Rainbow Bridge four (4) times between January 8, 2018, and March 14, 2018.

19. Regarding the surveillance video from the FFL on April 22, 2018, that ATF obtained of HEARN with the individual suspected to be WATKINS, further review of the video also shows that there is a third person waiting in the vehicle outside the FFL that appears to be a female with white or otherwise light complexion. Your affiant knows from training and experience that often individuals involved in firearm trafficking schemes will accompany the original purchaser of the firearms to the FFL to pick out the types of firearms to be purchased. Moreover, based upon training and experience, WATKINS' recent documented residency in Niagara Falls, New York, indicates likely ties to the Niagara Falls area, and in turn possible association to other unknown individuals located in Niagara Falls, New York, and its surrounding areas, who might receive the diverted firearms and/or participate in the firearms trafficking scheme. Ohio is known to be a source state for firearm traffickers to commonly divert firearms to other market areas to include New York and Canada, given that Ohio has fewer state-level laws and regulations regarding the purchase of firearms.

20. Your affiant received information that HEARN returned to the central Ohio FFL on April 26, 2018, to inquire about the transaction he initiated on April 22, 2018. Again, the co-owner/operator of the central Ohio FFL informed HEARN that he was not cleared to transfer the firearms to HEARN at that time but left the transaction open for a later date. Both HEARN's silver BMW and the black Nissan Altima with Virginia license plate VWE445 were captured on the FFL's video surveillance system entering the parking lot of the location together on April 26, 2018. Based on the FFL's video surveillance system, HEARN made contact with the occupants of the black Nissan Altima; however, no one from that vehicle entered the store with HEARN.

21. During conversation with the co-owner/operator of the FFL, HEARN indicated that he hoped to have his firearms in hand by April 27, 2018, as he was planning to leave town on that

date. Your affiant knows from review of HEARN's purchasing history he has conducted the twelve (12) multiple sale transactions at twelve (12) different FFLs all since January 19, 2018. On April 26, 2017, due in part that HEARN, WATKINS, GREEN, DELORENZO, and others are suspected of trafficking firearms from the state of Ohio, ATF obtained an exigent ping on telephone number (614) 632-2084. An exigent ping provides law enforcement with immediate global positioning location(s) for the device and 48 hours' worth of toll records. From review of the data obtained from the exigent ping, your affiant identified two (2) telephone numbers that belong to other FFLs in the Columbus, Ohio area, one of which was the Cabela's FFL located at 1650 Gemini Place, Columbus, Ohio 43240. Your affiant contacted the Cabela's FFL to inquire if HEARN had conducted a firearm purchase. Your affiant learned that HEARN did in fact make a firearm purchase for two (2) firearms on April 26, 2018.

22. Continuing the review of the information obtained from the exigent ping request, your affiant identified the telephone number of (716) 478-2900. The area code 716 is associated to New York. On April 26, 2018, HEARN made multiple contact calls with this identified telephone number throughout the last 48 hours, including contact between conversations with the number associated with the Cabela's FFL. You affiant knows from training and experience that individuals will communicate through use of telephones to coordinate acts of their illegal firearm trafficking scheme, and that the above call patterns are indicative of activity associated with firearms trafficking.

23. Records obtained from the exigent ping on the telephone associated to WATKINS displayed that he was located in the area of Niagara Falls, New York, on the morning of April 26, 2018. Through investigation, and WATKINS' statements to OSP, your affiant knows that WATKINS and his girlfriend were making an approximate 700 mile or 11 hour round trip to

Columbus, OH just to go shopping. Your affiant knows this is not a plausible explanation for the travel having driven past numerous other shopping venues. Moreover, on April 27, 2018, your affiant learned through investigation that WATKINS received approximately six (6) firearms while he was in Ohio.

24. Your affiant knows that the telephone number identified with the 716 area code most likely is associated to an individual involved in the illegal firearm trafficking scheme. HEARN contacted this number multiple times close in time to the contacts he made with the identified FFL phone numbers. An exigent ping was obtained on the telephone number of (716) 478-2900. When the first GPS location was received, the location data placed the device outside of Youngstown, Ohio. Working with the Ohio State Highway Patrol (OSP), your affiant requested a BOLO (be on the lookout alert) for the black Nissan Altima with Virginia license plate VWE4474 in the area of the GPS data. OSP Troopers assisted in the multi-county search for the vehicle in the area of the received GPS data. The black Nissan Altima was located outside of Ashtabula, Ohio. OSP Troopers conducted a probable cause traffic stop on the vehicle. WATKINS was identified as the driver of the vehicle and consented to a further search of the vehicle. In the front passenger seat was DELORENZO. The troopers noted that there was a sales receipt from Vance Outdoors, an FFL located on Cleveland Avenue in Columbus, Ohio. The sales receipt documented a serial number for a High Point manufactured firearm, with serial number XR7250007.

25. During the traffic stop, WATKINS told the Troopers that he and his girlfriend (co-passenger) had traveled from New York to shop in Columbus, Ohio for the day. WATKINS was placed in the rear of a marked OSP patrol car for safety and security during the search of the vehicle. His girlfriend, DELORENZO, was placed in a separate OSP patrol car. OSP informed

your affiant that the in-car camera recorded WATKINS' behaviors while watching the Troopers search the vehicle. His actions were described as nervous and audibly making comment alluding to concern as Troopers searched areas of the vehicle. The Trooper, who has experience in interdiction stops, described this behavior as an indicator that there may be contraband of some type concealed in the vehicle. The vehicle was impounded for further investigation.

26. WATKINS has multiple documented crossings out of the United States and into Canada that align close in time to HEARN's firearm purchases, and also correspond close in time to the time-to-crime calculations on four firearms. Your affiant knows through training, experience, and conversation with other trained investigators that individuals smuggling goods from the United States will conceal contraband in hidden compartments, behind seat and door panels, and in other void areas in a vehicle to deceive detection. The modes/mechanisms of concealment may vary greatly depending on the type of contraband that is being smuggled. Often these voids take specialized tools and expertise to disassemble or gain access to the concealed item(s). Additionally, depending on the complexity of the concealment technique it may take an extended period to recover the concealed item(s).

27. On April 27, 2018, your affiant received a Federal search warrant from the Northern District of Ohio for the black Nissan Altima that was operated by WATKINS with DELORENZO. The search of the vehicle yielded the recovery of seven (7) firearms. The firearms were concealed between the foam and seat frame of both front seats. Specifically, four (4) firearms were located under the seat where DELORENZO was seated and three (3) were located under WATKINS' seat. One (1) of the firearms recovered from WATKINS' seat was loaded with eight (8) rounds of ammunition. Your affiant compared the serial numbers of the recovered firearms to the known firearms purchased by HEARN on April 26, 2018, and the recovery accounted for all six (6)

firearms. Based on the above, HEARN purchased the six (6) firearms in Columbus, Ohio, and on the same date transferred the firearms to WATKINS and DELORENZO who were returning to Niagara Falls, New York before they were interdicted by the OSP Troopers. According to the exigent ping data on HEARN's telephone number, he never left Columbus, Ohio on April 26, 2018. OSP Troopers provided WATKINS with your affiant's telephone number for any questions.

28. On April 27, 2018, your affiant missed two (2) incoming telephone calls from the phone number of (716) 545-0776. A check in law enforcement databases identified the telephone number as belonging to DELORENZO at the address of 130 N. 8th Street, Lewiston, New York 14092. Also on April 27, 2018, your affiant determined through further investigation that WATKINS was last known to be living with DELORENZO in Lewiston, New York. A review of social media displays that WATKINS and DELORENZO have been associated together as far back October of 2015.

29. Your affiant knows through training and experience that a person who purchases firearms may store those items, documents related to the acquisition of the firearms, or other related material at any associated residence, garage, out building, storage unit, and vehicle(s). It is probable that the TARGET PREMISES might contain evidence that will aid in developing further evidence of the conspirators' firearm trafficking activities, including further establishing a pattern of HEARN, WATKINS, GREEN, DELORENZO and others unknown in their firearm trafficking activities.

## CONCLUSION

30. Based on the information set forth in this affidavit, I submit there is probable cause to believe that the individuals identified as Jeremy L. HEARN, Jerome I. WATKINS, Marcedes L. GREEN, Kristina E. DELORENZO, and others have violated Title 18, United States Code §

922(a)(6), making false statements in connection with the acquisition of firearms, and Title 18, United States Code § 371, conspiring to violate the law of the United States. Your affiant further submits there is probable cause to believe that, pursuant to the information set forth in this affidavit and that set forth in Attachments A and B, the property and premises located at 130 N. 8th Street, Lewiston, New York, contains evidence and instrumentalities of violations of federal law, including Title 18, United States Code § 922(a)(6), and Title 18, United States Code § 371, namely: evidence of a crime; contraband, fruits of a crime, or other items illegally possessed; property and materials designed for use, intended for use, or used in committing violations of those statutes.

31. Accordingly, your affiant respectfully requests that this Court issue a warrant authorizing the search of the TARGET PREMESIS located at 130 N. 8th Street, Lewiston, New York, as described in Attachment A, and authorizing a search for and seizure of the items described in Attachment B hereto, incorporated herein by reference.

32. Your affiant further requests that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. Your affiant believes that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation into criminal activity, the entire extent of which is not known at this time. Based upon my training and experience, and information I have received from ATF and other law enforcement agents, your affiant knows that criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other criminals as they deem appropriate, e.g., post them publicly online through different forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

_____
Teresa Petit, Special Agent
Bureau of Alcohol, Tobacco,
Firearms and Explosives

Sworn and subscribed to me this
28th day of April 2018.

_____
Magistrate Judge McCarthy
United States District Court
Western District of New York

**JEREMIAH J. McCARTHY**
**UNITED STATES MAGISTRATE JUDGE**